Filed 6/30/21 (unmodified opn. attached)

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARIA MORENO,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>PARMJIT SINGH BASSI et al.,<br><br>      Defendants and Appellants. | F078400<br><br>(Super. Ct. No. MCV064243)<br><br><br>**ORDER MODIFYING OPINION**<br>[NO CHANGE IN JUDGMENT] |
| MARIA MORENO,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>PARMJIT SINGH BASSI et al.,<br><br>      Defendants and Respondents. | F078593 |

**THE COURT:**

It is hereby ordered that the opinion filed on June 8, 2021, be modified as follows:

On page 20, the text of footnote 6 is deleted in its entirety and the following text is inserted in its place:

**6**      This opinion does not imply the trial court would abuse the discretion granted by section 1033, subdivision (a) if, on remand, it did not

reduce the costs awarded to Moreno under section 1032.  Because the trial court chose not to exercise the discretionary authority granted by section 1033, subdivision (a) in its initial award of costs and the parties have not briefed the issue on appeal, we do not address whether that discretionary authority to reduce extends, or does not extend, to the costs recoverable pursuant to Labor Code section 1194, subdivision (a).

There is no change in judgment.

FRANSON, Acting P.J.

WE CONCUR:


SMITH, J.


SNAUFFER, J.

2.

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARIA MORENO,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>PARMJIT SINGH BASSI et al.,<br><br>    Defendants and Appellants. | F078400<br><br>(Super. Ct. No. MCV064243)<br><br><br>**OPINION** |
| MARIA MORENO,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>PARMJIT SINGH BASSI et al.,<br><br>    Defendants and Respondents. | F078593 |

APPEALS from judgments of the Superior Court of Madera County. James E. Oakley, Judge.

---

\*      Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III., IV., V. and VI. of the Discussion.

California Rural Legal Assistance, Inc., Estella M. Cisneros and Anali Cortez for Plaintiff and Appellant.

Law Office of Kevin G. Little and Kevin G. Little for Defendants, Appellants, and Respondents.

-ooOoo-

A jury awarded plaintiff Marina Moreno $16 in unpaid minimum wages and $16 in liquidated damages and found against her on causes of action alleging she had been raped by her employer. In posttrial proceedings, the trial court determined plaintiff was the prevailing party for purposes of Code of Civil Procedure section 1032[1] and awarded her $19,523 in costs. The court also awarded plaintiff $3.20 in attorney fees based on the formula in section 1031 that multiples the wages recovered by 20 percent.

Plaintiff's appeal and defendant's cross-appeal raise issues about the award of costs and the award of attorney fees. We note that the Legislature addressed cases involving a small award of damages and a relatively large amount of costs by enacting section 1033. It allows a trial court to reduce the costs otherwise recoverable as a matter of right under section 1032 "where the prevailing party recovers a judgment that could have been rendered in a limited civil case." (§ 1033, subd. (a).) Defendant asserts the costs awarded to plaintiff could have been reduced under section 1033. However, defendant's primary argument asserts Government Code section 12965, subdivision (b) bars plaintiff's recovery of many of the costs. That provision controls the award of costs on claims alleging violations of the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.).

In this case, plaintiff lost all the FEHA claims, lost some non-FEHA claims, and prevailed on some non-FEHA claims. In such a situation, the award of costs is governed by the interaction of section 1032 and Government Code section 12965, subdivision (b).

---

[1] Unlabeled statutory references are to the Code of Civil Procedure.

2.

We conclude Government Code section 12965, subdivision (b) bars plaintiff from recovering the costs caused *solely* by the inclusion of the FEHA causes of action in this lawsuit. The other costs incurred in the lawsuit are recoverable under section 1032, subject to the discretionary exception in section 1033, subdivision (a). On remand, the trial court must determine which cost items, if any, are barred by Government Code section 12965, subdivision (b) before entering an award in accordance with sections 1032 and 1033.

The parties' dispute over attorney fees requires an interpretation of section 1031 and Labor Code section 1194. The literal terms of these attorney fees provisions cover this case because of the recovery of minimum wages. In situations where these statutes overlap, we conclude Labor Code section 1194 controls because it is the more specific statute and its attorney fees provision is the most recently enacted. Accordingly, the trial court should have exercised the discretion granted by Labor Code section 1194 and awarded plaintiff reasonable attorney fees, rather than applying section 1031 and awarding 20 percent of the wages recovered. On remand, the trial court must determine the amount of reasonable attorney fees.

In the unpublished portion of this opinion, we address plaintiff's challenges the trial court's denial of her motion for a new trial. We conclude plaintiff was entitled to prejudgment interest on the damages awarded for the Labor Code violations; the trial court did not commit evidentiary error when it allowed the defendant to testify that he had never been convicted of a sex crime; plaintiff's assertions of defense counsel misconduct do not justify reversal because the jury was not prejudiced against plaintiff; and the trial court properly granted the motion for nonsuit by defendant's wife. Thus, the motion for new trial was properly denied.

We therefore affirm the judgment in part, reverse it in part, and remand for further proceedings on the issues of attorney fees and costs.

3.

## FACTS

The defendants are Parmjit Singh Bassi (Bassi) and his wife, Gurbakhsh Kaur Bassi (Ms. Bassi), both individually and doing business as Lucky Farms. Bassi testified that in 2011 he and his wife were the owners of Lucky Farms, an agricultural business that grew almonds and grapes on two properties. Ms. Bassi also testified that in 2011 she was an owner of Lucky Farms, she was listed as an owner of the property, and she signed documents related to Lucky Farms. Ms. Bassi also testified she was not involved in the operations of Lucky Farms.

The testimony offered by Moreno and Bassi about the events of October 2011 contain many contradictions. They met on October 1, 2011, when Moreno, her friend, and Moreno's daughter were driving to look for a house advertised for rent near Fairmead. While looking for the rental house, Moreno left Avenue 21 and turned onto a street where she saw two men working. Moreno stopped to ask if they knew where the rental house was located. Moreno testified that her friend asked whether there was any work available. The men said they did not know and suggested waiting for Bassi to ask him.

Moreno testified that when Bassi arrived, her daughter and friend spoke to him. Bassi testified that he believes he saw and spoke to Moreno, that she told him she needed work and money because she was being evicted, and that he gave Moreno his cell phone number and the number for his labor contractor. In contrast, Moreno testified her friend and daughter returned with Bassi's phone number after providing Bassi with her number. The parties agree Moreno and Bassi spoke by telephone later that day. Each testified the other initiated contact.

On the morning of October 2, 2011, Moreno went to Bassi's farm on Avenue 24. When Bassi arrived, he told Moreno to follow him. He drove to an almond orchard near Avenue 9 and Moreno followed him in her vehicle.

Bassi's appellate brief provides the following version of the events that occurred at the property with the almond orchard: "Upon arriving at the almond orchard, Bassi learned that Moreno had not contacted the labor contractor, and he told her she could not work. [Citation.] It was at that point that Moreno began flirting with him, and they went to a nearby trailer and had sex in exchange for payment of $250 the first time and then only $20 the second time. [Citation.] When she was only paid $20 the second time they had sex, Moreno became upset and repeatedly asked for another $250. [Citation.] When Bassi received a call from Moreno later on October 2, 2011, she did not accuse him of rape and did not act like she was scared or intimidated by him. [Citation.] Bassi insisted he did not rape Moreno, and he repeatedly denied raping her when questioned by law enforcement, despite being examined in his second language by an experienced interrogator."

Moreno's version of events states that when she and Bassi got out of their vehicles at the almond orchard, Bassi told her this was where she would work and showed her how to pole the almonds with a stick. Moreno performed this work for approximately an hour and then helped Bassi uncoil some water hoses. Bassi drove Moreno in his vehicle to where the hoses were located on the property. After moving the hoses, Bassi asked Moreno to get back into the truck so he could drive her to where she would be working next, cleaning the inside of a shop. Near the shop was a small trailer surrounded by a fence.

Bassi asked Moreno to enter the trailer to show her where she would be cleaning next. Once inside the trailer, Bassi pushed her onto a couch and began to undress her, holding her down. Moreno did not push Bassi off or try to hit or scratch him because she was scared and saw no way out. She believed she could not escape if she ran because Bassi had closed the fence surrounding the trailer.

After nonconsensual intercourse, Moreno cleaned herself with a handkerchief she had used while working. After they both got dressed, Bassi offered Moreno $20, which

she refused. Bassi told her to get into the truck, which she did because she was scared and felt she had no way of getting out. After opening a gate and driving through it, Bassi stopped the truck and tried to force Moreno to perform oral sex on him. Moreno said, "No." Bassi then drove back to the trailer and pulled her out of the truck. Bassi then sexually assaulted Moreno a second time. After Moreno cleaned herself, Bassi drove her back to her car and told her she could continue working or she could leave at noon.

Upset and crying, Moreno called someone she believed was a policeman. After the call, Moreno drove to the Madera Police Department and was directed to the sheriff's department. At the sheriff's department, Moreno was interviewed. After the interview, Moreno underwent a sexual assault examination.

Bassi was arrested and questioned by then Detective Zachary Zamudio. Bassi initially denied having sex with Moreno and later stated it was consensual. During the interrogation, Bassi asked if he could pay Moreno to drop the charges. A criminal case alleging two counts of rape was filed against Bassi.

**PROCEEDINGS**

In September 2013, Moreno filed a complaint against Bassi, Ms. Bassi and Lucky Farms asserting twelve causes of action. The first four causes of action alleged FEHA violations for (1) discrimination and harassment based on sex, (2) retaliation, (3) failure to take reasonable steps to prevent workplace discrimination, and (4) a hostile work environment. (Gov. Code, § 12940, subds. (a), (h), (k), (j).) The next five causes of action were for wrongful termination in violation of public policy, sexual battery, intentional infliction of emotional distress, assault, and battery. The final three causes of action alleged violations of the Labor Code and sought unpaid minimum wages, liquidated damages for failing to pay minimum wages, and waiting time penalties. (Lab. Code, §§ 203, 218.6, 1182.12, 1194, 1194.2.)

In March 2014, Bassi filed a motion to stay the civil lawsuit pending the resolution of his criminal case, Madera County Superior Court case No. MCR042232. The criminal

6.

case involved the same allegations of sexual assault as the civil case. The trial court granted the stay for all purposes pending the completion of the jury trial in the criminal case.

In the criminal case, two counts of rape were alleged and presented to the jury. The verdict form described the two counts using identical wording with nothing to differentiate them. In July 2015, the jury unanimously found Bassi not guilty on the first count and guilty on the second count.

In posttrial proceedings, Bassi argued the jury reached a compromise verdict and, based on the verdict form, juror statements and jury instructions, argued there was no way to determine that all 12 jurors convicted him of the same act of rape. The trial court agreed it was not possible to ascertain the act of which Bassi was acquitted and the act of which he was convicted. The court determined jeopardy had attached and a retrial on either count would violate Bassi's Fifth Amendment protection against double jeopardy because it could not be established that he had not been acquitted of whichever rape charge was retried. Accordingly, in April 2016, the court dismissed the criminal matter.

The prosecution appealed the trial court's order dismissing the criminal case. In November 2016, the prosecution requested dismissal of the appeal, which this court granted. Thus, the dismissal order based on double jeopardy became the final outcome of the criminal case. In December 2016, the trial court vacated its stay of the civil lawsuit.

In preparing for trial in this case, Moreno filed a request to dismiss her second (retaliation) and fifth (wrongful termination) causes of action. On June 25, 2018, the trial court heard motions in limine. The court partially granted Moreno's motion to exclude evidence about her sexual and reproductive history. The court also granted Moreno's motion to exclude evidence about (1) her 2002 conviction in Oregon for attempted delivery of a controlled substance, (2) a 16-year-old warrant for her arrest for leaving Oregon in violation of her parole terms, and (3) her fugitive status.

Moreno also sought to prohibit any type of inquiry into her immigration status. Defense counsel argued Moreno had a visa application pending with immigration authorities and a jury's finding that she was the victim of sexual assault would bolster the application. After hearing counsel's arguments, the court granted the motion subject to an Evidence Code section 402 hearing. The court also advised counsel that "every motion in limine to some extent is provisional or tentative because things do change during trial. Sometimes doors are opened."

On June 26, 2018, jury selection began. On July 2, 2018, the Evidence Code section 402 hearing was held. Moreno was sworn and testified. Defense counsel asked if Moreno had a valid social security number and she invoked the privilege against self-incrimination. Counsel also asked Moreno when she became aware of the U visa program[2] and she answered, "in 2012." Moreno stated she never applied for a U visa. The court ruled that the question about her social security number was intertwined with the issue of her immigration status and determined the probative value of Moreno's immigration status did not outweigh the undue prejudice. As a result, the court granted the motion in limine as to evidence about Moreno's use of social security numbers and her immigration status.

Testimony was presented to the jury from July 5, 2018 to July 12, 2018. After the close of evidence, Ms. Bassi moved for nonsuit or a directed verdict. The trial court granted the motion, concluding there was insufficient evidence to find there was a partnership or find Ms. Bassi was involved in any way in the management or control of

---

[2]     A U visa confers nonimmigrant status on undocumented immigrants who have been the victim of criminal activity in the United States and meet certain other criteria. The "U" designation is derived from paragraph (U) of section 1101(a)(15) of title 8 of the United States Code—the statutory provision setting forth the criteria for this nonimmigrant classification. (See *Torres–Tristan v. Holder* (7th Cir. 2011) 656 F.3d 653, 656.) This nonimmigrant classification was created by the Victims of Trafficking and Violence Protection Act of 2000 (Pub.L. No. 106–386 (Oct. 28, 2000) 114 Stat. 1464). (See *Lee v. Holder* (9th Cir. 2010) 599 F.3d 973, 974.)

the business. The court also concluded the fact the business was community property did not mean it was organized as a partnership.

During its deliberations, the jury submitted a question to the trial court asking: "If Ms. Moreno worked any amount of time, regardless of whether that was a legal or illegal employment, is she then considered Mr. Bassi's employee even if no paperwork signed?" After a discussion with counsel, the court answered the question by stating:

> "An employee is a person in the service of another for any lawful purpose under any agreement of hire, express or implied, oral or written, where the employer has the power or right to control and direct the employee in the material details of how the work is to be performed. [¶] If the person meets the requirements of this definition, paperwork does not need to be completed for the person to be considered an employee."

On July 19, 2018, the jury returned a special verdict. The jury found in Moreno's favor on her 10th cause of action for unpaid minimum wages and her 11th cause of action for liquidated damages. The jury found Moreno performed work for Bassi and was not paid the minimum wage of $8 per hour for two hours of work. On the 12th cause of action—the Labor Code claim for waiting time penalties—the jury found Bassi did not willfully fail to pay the full amount of wages earned by Moreno by the statutory deadline. Based on these finding, Moreno was entitled to minimum wages of $16 and liquidated damages of $16.

The jury found in favor of Bassi on all other causes of action, which included workplace harassment, intentional infliction of emotional distress, sexual battery, assault, and battery. Answering questions related to the claim for intentional infliction of emotional distress, the jury found Bassi's conduct was outrageous, but he did not intend to cause harm or cause fear of a harmful or offensive contact.

Moreno filed a motion for new trial supported by a declaration of counsel. Bassi opposed the motion. On September 21, 2018, the trial court heard the motion. After counsel presented argument, the court stated (1) it had considered each of the allegations

9.

of misconduct and error raised in Moreno's motion; (2) there was substantial evidence sufficient to support a verdict for either side; and (3) "none of the allegations of misconduct or error which have been stated by [Moreno], either individually or collectively, rise to the level of, in the Court's mind, that it was a miscarriage of justice." As a result, the court denied the motion for new trial. The court's written order denying the new trial motion was filed in October 2018.

The posttrial proceedings also included Moreno's memorandum of costs requesting $20,978 and Bassi's motion to strike or tax costs. In addition, Bassi and Ms. Bassi filed a memorandum of costs requesting $15,537.35 and Moreno filed a motion to strike or tax costs. Each side also filed a motion for attorney fees and opposed the other side's request for fees.

In October 2018, the trial court heard the motions relating to costs and attorney fees. The court awarded Moreno $3.20 in attorney fees from Bassi, which equaled 20 percent of the wages recovered. (See § 1031.) The court awarded Moreno costs from Bassi in the amount of $19,523 and awarded Ms. Bassi costs from Moreno in the amount of $435.

In November 2018, Moreno appealed from the judgment after jury trial. Bassi and his wife filed a cross-appeal challenging the award of costs to Moreno. The appeal and cross-appeal were assigned case No. F078400 by this court.

In December 2018, Moreno appealed the attorney fees award of $3.20 and the award of costs to Ms. Bassi. Her second appeal was assigned case No. F078593. In April 2019, this court granted the parties' joint motion and stipulation to consolidate the appeals.

## DISCUSSION

### I. STATUTORY ATTORNEY FEES

The parties dispute which attorney fees statute applies in this case. Moreno contends her request for attorney fees is governed by Labor Code section 1194, subdivision (a), which authorizes the recovery of reasonable attorney fees. Bassi contends section 1031 controls and caps Moreno's attorney fees at 20 percent of the amount of wages recovered.

#### A. Statutory Text

The parties' dispute presents a question of statutory construction. Our inquiry begins with the language of the statutes. (*Coker v. JPMorgan Chase Bank, N.A.* (2016) 62 Cal.4th 667, 674.) Labor Code section 1194, subdivision (a) provides:

> "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this *minimum wage* or *overtime* compensation, including interest thereon, *reasonable attorney's fees*, and costs of suit." (Italics added.)

In comparison, section 1031 provides:

> "In actions for the recovery of wages for labor performed, where the amount of the demand, exclusive of interest, does not exceed three hundred dollars ($300), the court shall add, as part of the cost, in any judgment recovered by the plaintiff or cross-complainant, an attorney's fee not exceeding 20 percent of the amount recovered."

#### B. Trial Court's Interpretation

On October 26, 2018, the trial court heard argument from counsel and ruled from the bench that section 1031 applied. The court stated section 1031 appeared to be specific and Moreno's claim was, at most, for two hours at $8 per hour. The court interpreted section 1031's phrase "amount of the demand" to exclude any interest and penalties and, as a result, concluded the amount of Moreno's demand did not exceed $300. The court also stated it did not find that section 1031 conflicted with Labor Code

11.

section 1194, a provision that clearly would apply in any situation where there was a demand greater than $300. The court concluded it was "left with, what I believe, thereafter is no discretion, but award $3.20 in attorney's fees."

## C. Principles of Statutory Construction

The goal of statutory construction is to ascertain and effectuate the intent of the Legislature. (*Pacific Gas and Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1152.) When dealing with apparently conflicting statutes, the general rule is that "[s]tatutes that are apparently in conflict should, if reasonably possible, be reconciled [citation], even when the court interprets provisions in different codes." (*Walters v. Weed* (1988) 45 Cal.3d 1, 9.)

Generally, when a court interprets a statute, its duty "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted." (§ 1858.) Where there are several provisions, courts are to adopt a construction, if possible, that "will give effect to all." (*Ibid.*) "In the construction of a statute … when a general and [a] particular provision are inconsistent, the latter is paramount to the former." (§ 1859.) Another principle of statutory construction of interest in this appeal holds "that in the event of a conflict between two statutes, effect will be given to the more recently enacted law." (*Bledstein v. Superior Court* (1984) 162 Cal.App.3d 152, 160.) This principle "is invoked only if the two cannot be harmonized." (*Ibid.*)

The interplay between the specific-over-general and recent-over-earlier principles has been addressed and resolved by our Supreme Court. "It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute *whether it was passed before or after such general enactment*." (*In re Williamson* (1954) 43 Cal.2d 651, 654, italics added.) In other words, the principle that later-enacted

12.

statues have precedence over earlier statutes is subject to the principle that specific provisions take precedence over more general provisions. (*Stoetzl v. Department of Human Resources* (2019) 7 Cal.5th 718, 748.)

        D.      <u>Labor Code Section 1194 Applies in This Case</u>

The first step of our analysis considers whether the wording of the two statutes can be harmonized. Labor Code section 1194, subdivision (a) applies to all actions for unpaid minimum wages or overtime compensation. Section 1031 applies to actions for recovery of all types of wages[3] where the amount demanded does not exceed $300. As a result, when an action seeks the recovery of minimum wages *and* the amount demanded does not exceed $300, the action falls within the literal terms of both statutes. The question of which statute controls in this area of overlap is not addressed by the statutory text. Neither statute has qualifying language stating how conflicts with other statutes should be resolved. Examples of such qualifying language include "[e]xcept as otherwise provided by statute" or "[n]otwithstanding any other provision of law." (§§ 687.030, 1446.) Therefore, we conclude the statutes cannot be completely harmonized because the literal terms of each statute apply in an action for the recovery of minimum wages for labor performed, where the amount of the demand does not exceed $300. (Code Civ. Proc., § 1031; Lab. Code, § 1194, subd. (a).) Based on this overlap, we conclude the statutes conflict—that is, they cannot be harmonized.

The second step of our analysis addresses this conflict and considers which attorney fees provision should control when they overlap. Section 1031 is general in the sense that it applies to claims for all types of wages and is specific in the sense that it is limited to actions where the wages demanded do not exceed $300. In comparison,

---

[3]    The Labor Code defines wages as including "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." (Lab. Code, § 200, subd. (a).)

13.

subdivision (a) of Labor Code section 1194 is general in the sense that it applies to claims of any amount and is specific as to the types of wages sought—that is, minimum wages and overtime compensation.

To resolve which statute is properly regarded as the specific statute and which is general, we consider which subject matter—the type of wages or the dollar amount demanded—was of greater importance to the Legislature. Based on the history underlying California's minimum wage law, we conclude the type of wages in question was more important to the Legislature than the amount demanded. (See generally, *Martinez v. Combs* (2010) 49 Cal.4th 35, 52–57 [history of minimum wage legislation].) Therefore, we infer the Legislature intended all actions to recover minimum wages or overtime compensation to be subject to the reasonable attorney fees provision in Labor Code section 1194, subdivision (a). Accordingly, we give the specificity as to the type of wages precedence over the specificity as to the amount of recovery. Thus, we conclude Labor Code section 1194, subdivision (a) is properly regarded as the more specific provision and it should control where it overlaps with section 1031.

Alternatively, if the specificity question is regarded as a tossup, Labor Code section 1194, subdivision (a) would take precedence over section 1031 under the principle that the later enacted statute should prevail. "When one subsequently enacted statute limits the scope of an earlier statute, such limitation is designated a partial repeal." (*Schatz v. Allen Matkins Leck Gamble & Mallory LLP* (2009) 45 Cal.4th 557, 573.) Section 1031 was enacted in 1933 and last amended in 1986. (Stats. 1933, ch. 744, § 190, p. 1901; Stats. 1986, ch. 377, § 4, p. 1578.) The amendment to Labor Code section 1194 authorizing the recovery of reasonable attorney fees was enacted in 1991. (Stats. 1991, ch. 825, § 2, p. 3666.) Consequently, the attorney fees provision in Labor Code section 1194, subdivision (a) is the more recently enacted and overrides section 1031 in situations where they overlap. In other words, Labor Code section 1194, subdivision (a)

14.

impliedly repealed section 1031 such that section 1031 no longer applies when the wages claimed are minimum wages or overtime compensation.

Based on the foregoing statutory construction, we conclude the trial court erred when it determined section 1031 applied and, as a result, it had no discretion but to award attorney fees in the amount of $3.20—that is, 20 percent of the wages recovered. We remand to the trial court for it to exercise the discretionary authority granted by Labor Code section 1194, subdivision (a) and determine the "reasonable attorney's fees" to be awarded to Moreno. As described below, the issue of costs also requires further proceedings in the trial court. Therefore, we cannot bring this litigation to a close by deciding the amount of the attorney fees award. (Cf. *Harrington v. Payroll Entertainment Services, Inc.* (2008) 160 Cal.App.4th 589, 594 [appellate court fixed reasonable attorney fees at $500 where plaintiff recovered $44.63 in unpaid overtime].)

II.     COSTS

A.      Costs Requested and Awarded

Moreno's memorandum of costs sought a total of $20,978. This amount included deposition costs ($7,884), interpreter fees ($5,950), court reporter fees ($2,030), filing and motion fees ($1,515), service of process ($1,149), travel for depositions ($1,018), and four other categories of cost. Bassi filed a motion to strike or tax costs with a supporting declaration from his attorney. Bassi argued no costs should be awarded or, alternatively, the amount should be reduced to $870.68 to reflect that 95 percent of her cost items pertained to her unsuccessful FEHA and related claims.

During the October 26, 2018 hearing addressing attorney fees and costs, the trial court stated Moreno was a prevailing party against Bassi under the definition in section 1032, subdivision (a)(4) and was entitled to court costs. Under that provision, a prevailing party "includes the party with a net monetary recovery." (§ 1032, subd. (a)(4).) The court awarded Moreno $19,523 in court costs from Bassi.

15.

The court also determined Ms. Bassi was a prevailing party,[4] denied Moreno's request for costs from Ms. Bassi, and awarded Ms. Bassi court costs in the amount of $435. The court found Moreno's FEHA causes of action were not frivolous—a finding that precluded awarding defendants the costs they incurred on the FEHA claims.

On appeal, Moreno contends the trial court abused its discretion when it awarded Ms. Bassi $435 in costs. Bassi's cross-appeal contends the trial court erred in awarding Moreno costs of $19,523 because almost all of her cost items had little or nothing to do with the wage claim on which she prevailed.

B.     Statutory Provisions

Section 1032, subdivision (b) sets forth the general rule that guarantees prevailing civil litigants an award of costs: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." Moreno qualified as a prevailing party because she had "a net monetary recovery." (§ 1032, subd. (a)(4).) Under section 1032, a "successful plaintiff is entitled to recover the whole of his or her costs, despite a limited victory." (*Michell v. Olick* (1996) 49 Cal.App.4th 1194, 1200.) In *Michell*, the court concluded the statute allowed "Michell to recover even those costs which relate solely to causes of action upon which she did not prevail." (*Ibid.*)

The application of section 1032, subdivision (b) to this case requires the consideration of its exception, which applies where "otherwise expressly provided by statute." A provision in the FEHA expressly provides for awards of costs. The last

---

[4]     The statutory definition of prevailing party also includes a defendant who has been dismissed, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant against those plaintiffs who recovered no relief from that defendant. (§ 1032, subd. (a)(4).) As a result of the grant of nonsuit, Moreno obtained no relief against Ms. Bassi.

16.

sentence of the current version of Government Code section 12965, subdivision (b) states:

> "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees, *except that, notwithstanding Section 998 of the Code of Civil Procedure, a prevailing defendant shall not be awarded fees and costs unless the court finds the action was frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so*." (Stats. 2018, ch. 955, § 5.)

Before January 1, 2019 (i.e., during the period judgment was entered in this case), the italicized language was not part of the statute. (See Stats. 2017, ch. 799, § 15.) The addition of the italicized language did not change the law because of the way the FEHA's earlier cost provision was interpreted in *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97 (*Williams*). First, our Supreme Court concluded "Government Code section 12965(b) is an express exception to Code of Civil Procedure section 1032(b) and the former, rather than the latter, therefore governs cost awards in FEHA cases." (*Id.* at p. 105.) Second, the court rejected a literal interpretation of the statute and concluded "a prevailing plaintiff should ordinarily receive his or her costs and attorney fees unless special circumstances would render such an award unjust [and a] prevailing defendant, however, should not be awarded fees and costs unless the court finds the action was objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so." (*Id*. at p. 115, italics omitted.) In 2018, the Legislature amended Government Code section 12965, subdivision (b), making the Supreme Court's interpretation part of the statute. (Stats. 2018, ch. 955, § 5.)

Another express statutory exception to section 1032's provision for the recovery of costs as a matter right is set forth in section 1033, subdivision (a): "Costs or any portion of claimed costs shall be as determined by the court in its discretion in a case other than a limited civil case in accordance with Section 1034 where the prevailing party

17.

recovers a judgment that could have been rendered in a limited civil case." The purpose of section 1033 is to discourage plaintiffs from over filing their cases and thereby wasting judicial resources. (*Cruz v. Fusion Buffet, Inc.* (2020) 57 Cal.App.5th 221, 234 (*Cruz*).) Accordingly, when exercising this statutory discretion, trial courts should consider the amount of damages the plaintiff reasonably and in good faith could have expected to recover in the lawsuit. (*Ibid.*)

   C.  <u>Application of Cost Provisions</u>

   Our analysis of how these statutory provisions apply to the facts of this case begins by considering how section 1032, subdivision (b) would apply if it were the only applicable statute. Under section 1032, subdivision (b), Moreno's recovery of $16 in minimum wages and $16 in liquidated damages on two of her causes of action would have entitled her to the whole of her costs, even those costs related solely to causes of action upon which she did not prevail. (*Michell v. Olick*, *supra*, 49 Cal.App.4th at p. 1200.)

   *1.  Costs Solely Related to FEHA Claims*

   Next, we consider whether Government Code section 12965, subdivision (b) narrows the recovery of costs that Moreno otherwise would receive under section 1032. Our Supreme Court has recognized the cost provision in Government Code section 12965, subdivision (b) is an express exception to section 1032. Therefore, we conclude that subdivision controls the award of costs caused *solely* by the inclusion of the FEHA causes of action in this lawsuit. (*Williams*, *supra*, 61 Cal.4th at p. 105; *Roman v. BRE Properties, Inc.* (2015) 237 Cal.App.4th 1040, 1058 (*Roman*).)

   Government Code section 12965, subdivision (b) prevents Moreno from recovering the costs incurred solely because the FEHA claims were included in her lawsuit because she did not prevail on the FEHA claims. Furthermore, although Bassi and his wife were prevailing party defendants on the FEHA causes of action, the statute

18.

allows them to recover their costs related to the FEHA causes of action only if Moreno's pursuit of those claims was frivolous. The trial court found Moreno's FEHA claims were not frivolous. Therefore, pursuant to Government Code section 12965, subdivision (b), neither side may recover the costs incurred solely because the FEHA causes of action were included in the lawsuit.

### 2. Costs Intertwined with FEHA and Non-FEHA Claims

Bassi contends Government Code section 12965, subdivision (b) also bars Moreno from recovering costs related to both the FEHA causes of action and her non-FEHA causes of action for wrongful termination in violation of public policy, sexual battery, intentional infliction of emotional distress, assault, and battery. We reject this statutory interpretation. Instead, we conclude a plaintiff's recovery of costs as a matter of right under section 1032 is limited by the cost provision in Government Code section 12965, subdivision (b) only as to the costs incurred *solely* because the FEHA claims were included in the lawsuit.

Our determination about the interaction between section 1032 and Government Code section 12965, subdivision (b) is based on the analysis and the conclusions reached in *Roman*. In that case, (1) plaintiffs pursued both FEHA and non-FEHA causes of action, (2) defendant prevailed on all the claims when its motion for summary judgment was granted, and (3) the trial court awarded defendant all its costs as a matter of right pursuant to section 1032. (*Roman*, *supra*, 237 Cal.App.4th at p. 1049.) The court concluded section 1032 governed the allowable costs incurred only as a result of the non-FEHA causes of action being included in the lawsuit. (*Roman*, *supra*, at p. 1059.) Similarly, we conclude section 1032 authorizes Moreno's recovery of the cost incurred on her non-FEHA causes of action for wrongful termination in violation of public policy, sexual battery, intentional infliction of emotional distress, assault, and battery. Furthermore, to the extent those costs also would have been incurred if only the FEHA

19.

causes of action had been pursued, we conclude section 1032 controls the recovery of "costs incurred as the result of defending intertwined and inseparable FEHA and non-FEHA claims."[5] (*Roman*, *supra*, at p. 1059.) This statutory interpretation "implements a clear legislative goal of encouraging potentially meritorious FEHA suits." (*Id*. at p. 1062.) Adopting the opposite statutory construction and concluding Government Code section 12965, subdivision (b) precluded Moreno from recovering the overlapping costs would undermine this policy.

To summarize, we conclude Government Code section 12965, subdivision (b) limits Moreno's recovery of cost only by preventing her recovery of costs caused *solely* by the inclusion of the FEHA causes of action in this lawsuit. All other allowable costs are recoverable by Moreno under section 1032, subject to the discretionary exception in section 1033, subdivision (a).[6] To illustrate the limitation imposed by Government Code section 12965, subdivision (b), Moreno would not be able to recover a filing fee for a motion that dealt exclusively with FEHA issues.

### 3. *Appellate Relief*

Here, the trial court awarded Moreno all of her costs against Bassi without conducting an inquiry into which costs, if any, were incurred solely as a result of Moreno's pursuit of the FEHA causes of action. Accordingly, the matter must be

---

[5]    The court described the inseparable costs as "costs that cannot be apportioned between overlapping FEHA and non-FEHA claims." (*Roman*, *supra*, 237 Cal.App.4th at p. 1059.) Subsequently, the court rephrased this description, stating "the overlapping costs with which we are concerned here have not added to the burden of the litigation on the party defending against FEHA claims." (*Id.* at p. 1060.)

[6]    We note that the discretionary authority granted by section 1033, subdivision (a) does not extend to costs awarded on the Labor Code claims pursuant to Labor Code section 1194, subdivision (a). (See *Cruz, supra*, 57 Cal.App.5th at pp. 231–234, 242 [where Labor Code § 1194 applies, it displaces § 1032].) This footnote should not be interpreted as implying the trial court would abuse the discretion granted by section 1033, subdivision (a) if, on remand, it did not reduce the costs awarded.

20.

remanded to the trial court to make that determination and adjust the award of costs if necessary. It falls within the trial court's discretion to seek input from the parties, such as additional briefing in which the parties identify the costs they contend were caused solely by the inclusion of the FEHA causes of action in the lawsuit, before deciding which costs Moreno is entitled to recover.

D.     Costs Awarded Ms. Bassi

Moreno contends the trial court abused its discretion in awarding Ms. Bassi costs in the amount of $435. In response, Ms. Bassi's respondent's brief states she is no longer requesting payment of her filing fee and states this court can treat the awarded filing fee as the trial court treated the remainder of Ms. Bassi's claimed costs. In light of Ms. Bassi's withdrawal of her request, we reverse the portion of the judgment awarding $435 in costs to Ms. Bassi.

III.     INADEQUATE DAMAGES AND PREJUDGMENT INTEREST[*]

Moreno contends Labor Code section 1194 and Civil Code section 3287 entitle her to prejudgment interest on the jury award of $16 in unpaid minimum wages. Moreno's 10th cause of action for unpaid minimum wages requested the unpaid balance of the wages "and interest thereon." The judgment on special verdict stated Moreno was entitled to recover "damages in the sum of $16.00 including interest accruing at the rate of 10 percent per annum from the date of the verdict until paid." Moreno's motion for new trial raised the issue of prejudgment interest and asserted she was entitled to interest under Civil Code section 3287, subdivision (a) from the time her right of recovery arose.

Bassi contends Moreno approved the proposed judgment and, therefore, cannot attack on appeal its failure to include prejudgment interest. We have reviewed the portions of the record cited by Bassi to support his contention that Moreno approved the form of judgment and nothing in the judgment itself or in the reporter's transcript of

---

[*]     See footnote, *ante*, page 1.

21.

proceedings before the judgment was entered actually show the judgment had been approved.

Labor Code section 1194, subdivision (a) provides that an employee is entitled to recover the full amount of unpaid minimum wages "including interest thereon, reasonable attorney's fees, and costs of suit." This reference to interest means prejudgment interest, otherwise it would be surplusage because section 685.010, subdivision (a) provides that "[i]nterest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied." (See 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 326, p. 932 [a "judgment bears interest at the legal rate from its date of entry by force of law, regardless of whether [the judgment] contains a declaration to that effect"].)

We conclude Labor Code section 1194 entitles Moreno to prejudgment interest on the unpaid minimum wage, which began to accrue on October 5, 2011. (See Lab. Code, § 202, subd. (a).) Therefore, on remand, the judgment should be modified to include an award of prejudgment interest.

IV.     EVIDENCE OF THE ABSENCE OF A CRIMINAL CONVICTION[*]

    A.     Background

        1.     *Voir Dire*

The existence of a criminal case against Bassi was raised during voir dire on June 28, 2018. When a new prospective juror was called to replace one who had been excused, he stated he probably would not have answered the questions asked earlier in the manner of the other jurors and he had questions that had not been asked. His first question was whether a criminal case had been filed. The court responded by stating the other jurors would go outside the courtroom for a few minutes and questions would be asked directly to the new prospective juror. After a conference with counsel, the court

---

[*]     See footnote, *ante*, page 1.

stated to the prospective juror: "The simple answer is I can't say." After further inquiry, the court recused him.

Subsequently, during voir dire on July 3, 2018, defense counsel referred to the criminal proceeding in a comment and question to a prospective juror. Counsel stated:

> "You're probably also going to hear some evidence that my client, back in 2011, was arrested based on some of the allegations in this case. Arrested only. Is that, do you have any presumption that if somebody is arrested[,] they necessarily did what they were arrested for?"

The prospective juror responded: "Not at all." When asked to explain why "at all" was included in the answer, the prospective juror stated: "Just because you're arrested doesn't say you're guilty. To me, that's common sense."

Later defense counsel stated to another prospective juror who had been employed by a law enforcement agency for many years whether the juror would have any difficulty in evaluating police witnesses like any other witness. The prospective juror answered, "They're human beings, I learned that working with them." Defense counsel also stated to that prospective juror:

> "[Y]ou deal with people who, by the fact they're present in your institution, they've been convicted of a crime. In this case we're talking about somebody that was arrested only. [¶] Are you going to make any negative presumptions about somebody being arrested for something?"

The prospective juror answered "No" and stated, "You're innocent until proven guilty." After the prospective jurors had been excused for the noon recess, the trial court asked counsel if there was any matter that should go on the record, which lead to the following exchange:

> "[MORENO'S COUNSEL]: … I noticed [defense counsel], during the voir dire, mentioned Mr. Bassi was arrested only. That's not entirely accurate. I know we still have yet to meet and confer as to the use of the — I believe it was the July 15th verdict, so we still have to meet and confer about that. But I just wanted to raise that as a concern."

23.

"THE COURT: I noticed that at the time, and I think it is something that you have to be careful about. Clearly, it's going to come out in the trial that he was arrested, and we don't want to give them a false impression that he was convicted of anything. On the other hand, saying 'arrested' only has its own connotation that might not be accurate. But think about it over the lunch hour and see if you can come up with a consensus or agreement as to what the limitations are, and that would be in voir dire."

The reporter's transcript of the afternoon section does not reflect any agreement by counsel on how to handle the criminal proceeding during voir dire. That afternoon, defense counsel stated to a prospective juror that "[t]here's evidence in this case that my client, Mr. Bassi, was arrested. [¶] Are you going to draw any conclusion for the fact that somebody was arrested?" The prospective juror answered, "No."

### 2. Opening Statements

During her opening statement, Moreno's counsel mentioned the criminal proceeding by stating Moreno reported the incident to the police within hours after being raped. At the end of her opening statement, counsel said:

"[Moreno] spoke up in 2011 when she reported the assault to the police, She spoke up in 2013 when she filed this lawsuit. She spoke up in 2015 when she testified in criminal court. And she will speak up today in front of you, all the jurors, to tell you what happened to her, what Defendant Bassi did to her. Thank you."

Moreno's counsel's opening statement also included additional details about Moreno reporting the assault to law enforcement and the ensuing investigation. For example, counsel referred to two recorded pretext telephone calls[7] Moreno made to Bassi with the help of law enforcement personnel.

---

[7] A pretext call is an investigative tool used by law enforcement in which the victim makes a telephone call to the alleged offender and the conversation is recorded by law enforcement and booked into evidence. During the conversation, the victim asks the alleged offender about details of the alleged offense in an attempt to elicit a response. The alleged offender is not told that law enforcement personnel are listening or that the conversation is being recorded.

Defense counsel also mentioned the criminal proceeding during his opening statement, which began:

> "Good morning, ladies and gentlemen. This case is not about a victim. This case is about a desperate woman who tried already in criminal court to ruin my client's life and is now asking for money based on the same lie."

Counsel also mentioned Moreno saw a counselor with the victim services unit, stating that unit that works closely with the district attorney's office and Moreno saw the counselor in connection with the criminal matter.

### 3. Testimony Presented

The first witness called by Moreno was Lieutenant Zamudio of the Madera County Sheriff's Office. Lieutenant Zamudio was the detective who arrested Bassi and participated in Bassi's interrogation. The lieutenant testified Bassi initially denied having sex with Moreno and, later in the interview, stated it was consensual. The lieutenant also described a pretext telephone call made to Bassi.

The second witness called by Moreno was a sheriff's deputy who participated in the investigation and assisted Moreno in a different pretext call. Other witnesses also testified about matters related to the criminal investigation. This included a registered nurse who works as a sexual assault nurse examiner.

When Bassi testified, his attorney asked, "Have you ever been convicted of any sort of a sex crime?" Moreno's counsel made a relevance objection. After a bench conference without a court reporter, the trial court overruled the objection. Bassi answered "No."

### 4. Closing Argument

Prior to closing argument, Moreno's counsel asked the court "how we can or should refer to the result of Mr. Bassi's criminal trial; whether we should not touch it at all during closing or whether we would be allowed to discuss the result." The court stated:

25.

"It's not in evidence and, therefore, absent a stipulation, I think you've all been pretty much consistent on talking about the fact there was a criminal proceeding and then leaving it alone after that. I don't know any other way of handling that, especially in light of the status of it. It was a jury verdict that included a guilty and a not guilty, but no conviction, because you're not convicted if you're not sentenced. And in this case the jury verdict was set aside so it certainly is not a verdict of guilty at this point."

Drawing a distinction between the specific outcome rendered by the jury in the criminal trial and the overall result, Bassi's counsel stated he asked Bassi general questions about his criminal history "but not in a pointed fashion pertaining to the trial." The court responded:

"I think I'm just going to leave it like that. If anybody wants to propose an instruction, the Court might consider it. But I'm thinking sometimes an instruction to a jury not to consider something only underscores the issue and can be problematic, in this case, for either side.

"I think it best just not touching it and leaving it at that. If they ask a question – if the jury comes back with a question about it, we may have to address it. But even then I could tell them it's not in evidence and they're not to consider it. So I would say to just not make reference to any results of the trial."

Neither side proposed an instruction about how the jury should consider the criminal proceedings against Bassi.

B.     Analysis

1.     Contentions

Moreno contends prejudicial error occurred when Bassi testified about the absence of a criminal conviction. Moreno argues the standard of review for the trial court's evidentiary ruling is an abuse of discretion, the evidence of the lack of a sex crime conviction was irrelevant, the court committed legal error when it allowed the testimony, and the legal error was prejudicial.

Moreno argues that without more evidence about the result of the criminal trial, this isolated and incomplete information, bolstered by comments from Bassi's counsel in

his opening statement and closing argument, mislead the jury into believing Bassi had been acquitted of the criminal charges of sexual assault. Moreno contends this belief caused the jury to infer Bassi had not sexually assaulted Moreno and, therefore, was not civilly liable for sexual harassment in the workplace.

Bassi contends his testimony about the absence of a criminal conviction was offered to counter the efforts of Moreno to imply that he had been convicted of rape. Bassi notes that after he testified to the absence of a sex crime conviction, neither party attempted to introduce any further evidence about the outcome of the criminal proceeding, much less the specific result.

### 2. Other Approaches

Moreno's contentions have multiple facets. We first address her reference to isolated and incomplete information, which could be read as implying the trial court erred by failing to allow additional evidence to be introduced. Alternatively, it would be read as implying the court erred by failing to give a limiting instruction.

Here, the trial court did not err by excluding additional details about the outcome of the criminal proceeding because Moreno did not attempt to introduce any such evidence. As to the failure to give a limiting instruction, trial courts in a civil case generally do not have a sua sponte duty to instruct the jury. (See *Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1130–1131 [trial court in a civil case has no duty to instruct on its own motion].) In a discussion with counsel, the trial court offered to consider any instructions offered about the outcome of the criminal case and informed counsel that if the jury asked a question about it the court could tell the jury that the outcome was not in evidence and they were not to consider it. The appendices prepared by the parties do not include any request for a limiting instruction. Accordingly, the trial court did not commit legal error by failing to provide one. (See Evid. Code, § 355

27.

[instructing jury about limited admissibility]; *Janice H. v. 696 North Robertson, LLC* (2016) 1 Cal.App.5th 586, 601.)

### 3. Relevancy and Prejudice

"Except as otherwise provided by statute, all relevant evidence is admissible." (Evid. Code, § 351.) Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) Evidence Code section 352 addresses the exclusion of evidence by stating: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Generally, trial courts have wide discretion in determining relevance and in weighing the prejudicial effect of proffered evidence against its probative value. (*Willis v. City of Carlsbad* (2020) 48 Cal.App.5th 1104, 1132.) Accordingly, appellate courts overturn such determinations only if the trial court abused its discretion. (*Ibid*.) Under the abuse of discretion standard of appellate review, the trial court's ruling will stand unless the appellant shows the court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*Ibid*.) In other words, an "[a]buse of discretion is never presumed; it must be affirmatively established by the party complaining of the court's order, and all reasonable inferences from the evidence which will uphold the order will be indulged." (*Estate of Walker* (1963) 221 Cal.App.2d 792, 796.)

Here, it appears Bassi's theory of relevancy is that his testimony about the absence of a conviction for a sex crime tended to disprove he had been convicted of raping Moreno, a fact that could have been wrongly inferred from the evidence Moreno offered about Bassi's arrest and his other interaction with the lieutenant and sheriff's deputy who

28.

testified at the civil trial. During voir dire, the trial court recognized the possibility of this inference and its damage to Bassi's defense when it stated to counsel: "Clearly, it's going to come out in the trial that he was arrested, and we don't want to give them a false impression that he was convicted of anything." Thus, when the trial court ruled on Moreno's relevancy objection, it was faced with weighing (1) the potential prejudice to Bassi of the false impression that he had been convicted and (2) the potential prejudice to Moreno of allowing him to testify he had not been convicted. The trial court's weighing of the prejudicial effect of excluding and of admitting the testimony and its decision to allow Bassi's testimony was not patently absurd, arbitrary or capricious. There were considerations on each side of the issue and, therefore, it would be inappropriate for this court to overturn the decision of an experienced trial judge who presided over the entire trial.

## V.   PREJUDICIAL MISCONDUCT*

### A.   Legal Principles

The granting of a motion for new trial is authorized for an "[i]rregularity in the proceedings of the court, jury or adverse party" that prevents any party from having a fair trial. (§ 657, subd. 1.) Our Supreme Court has concluded attorney misconduct qualifies as such an irregularity and, thus, may be grounds for a new trial. (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 870 (*Decker*).)

Generally, "a trial judge is accorded a wide discretion in ruling on a motion for new trial and … the exercise of this discretion is given great deference on appeal." (*Decker*, *supra*, 18 Cal.3d at pp. 871–872.) A trial court deciding a motion for new trial based on attorney misconduct must resolve two questions. First, did the challenged actions actually constitute attorney misconduct? Second, if misconduct occurred, was it prejudicial to the moving party? (See Cal. Const., art. VI, § 13; Code Civ. Proc. § 475.)

---

\*      See footnote, *ante*, page 1.

29.

Appellate courts usually will not consider a claim of attorney misconduct in a civil case unless two conditions are satisfied—namely, the record shows (1) a timely and proper objection and (2) a request that the jury be admonished.  (*Horn v. Atchison, T. & S.F. Ry. Co.* (1964) 61 Cal.2d 602, 610.)  A failure to object during trial may be a proper basis for denying a motion for new trial.  (8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, § 21, pp. 602–603.)  These general principles are subject to an exception "where there are flagrant and repeated instances of misconduct," and it is clear from the record that objecting and asking for admonitions would have overemphasized the objectionable material and would have alienated the jury.  (*Simmons v. Southern Pac. Transportation Co.* (1976) 62 Cal.App.3d 341, 355.)  When these conditions are met, an appellate court may consider the alleged instances of misconduct despite the absence of objections or requests that the jury be admonished.  (*Ibid*.)  Also, when the trial court does not admonish the jury despite a number of requests, an appellate court may excuse an attorney from making further requests for admonitions and consider the issue on appeal.  (*Love v. Wolf* (1964) 226 Cal.App.2d 378, 392.)

When a motion for new trial has been *denied*, the deferential abuse of discretion standard of review does not apply to the second question—that is, the existence of prejudice.  (*Decker*, *supra*, 18 Cal.3d at p. 872.)  Instead, appellate courts are required to independently determine whether prejudice resulted from the misconduct.  (*Ibid*.)  Prejudice exists if it is reasonably probable that the jury would have arrived at a verdict more favorable to the moving party in the absence of the irregularity or error.  (*Ibid*.)

B.     Lack of Prejudice

Here, the trial court denied the motion for new trial on the ground the alleged misconduct was not prejudicial to Moreno.  Under the applicable standard of review, we independently consider the question of prejudice.  (*Decker*, *supra*, 18 Cal.3d at p. 872.)  The jury's actions are the strongest indicators of whether or not the jury was prejudiced

30.

against Moreno.  Those actions include the question the jury presented to the court and the jury's answers to the questions in the special verdict.

### 1. Jury's Question

The jury instructions on Moreno's FEHA claim of workplace harassment stated Moreno was required to prove she "was an employee of … Bassi."  Initially, the instructions did not define the term "employee."  The jury's question asked:  "If Ms. Moreno worked any amount of time, regardless of whether that was a legal or illegal employment, is she then considered Mr. Bassi's employee even if no paperwork signed?"  The trial court's answer provided a definition of employee and addressed the need for paperwork:

> "An employee is a person in the service of another for any lawful purpose under any agreement of hire, express or implied, oral or written, where the employer has the power or right to control and direct the employee in the material details of how the work is to be performed.  [¶] … [¶] … If the person meets the requirements of this definition, paperwork does not need to be completed for the person to be considered an employee."

The jury's inclusion of the phrase "regardless of whether that was a legal or illegal employment" shows the jury did not regard the legality of the arrangement as material to determining whether Moreno qualified as an "employee" for purposes of her FEHA claim.  Instead, the focus of the jury's question was on whether employee status is achieved only after formal paperwork is completed.

### 2. Special Verdict

Next, we consider how the jury applied the foregoing definition of employee when it answered the first question in the special verdict, which asked:  "Was Maria Moreno an employee of Parmjit Singh Bassi?"  The jury answered, "Yes."  This answer in favor of Moreno demonstrates the jury was not prejudiced against Moreno based on the possibility that she was not a citizen and did not have a visa authorizing her to work.  Analyzed from a different perspective, the answer does not reasonably support the inference that the jury

31.

believed it was acceptable for Bassi to harass or assault Moreno because she did not have a work visa.

The jury also gave an affirmative answer to Question 25 in the special verdict, which asked: "Did Maria Moreno perform work for Parmjit Singh Bassi?" The jury then found Bassi was liable to Moreno for failing to pay her minimum wage for two hours of work and for liquidated damages. These explicit findings in favor of Moreno contradict the assertions that the jury was prejudiced against Moreno.

In *United States v. Menendez* (9th Cir. 2011) 440 Fed.Appx. 906, the defendant was charged with 36 counts of theft of a thing of value and aggravated identity theft. (*Id*. at p. 908.) A jury convicted him of seven counts of theft and four counts of aggravated identity theft. (*Ibid*.) On appeal, the defendant argued he was denied his constitutional right to a fair trial by an impartial jury and the trial court erroneously denied his motion to investigate alleged juror misconduct. (*Id*. at pp. 911–912.) The Ninth Circuit rejected the claim of misconduct, stating "the fact that the jury reached a split verdict supports the conclusion that the jury reached a reasoned verdict and was not influenced by extraneous information that could have prejudiced Menendez." (*Id*. at p. 912–913.)

This analysis applies with equal force to the split verdict reached by the jury in this case. The jury found for Moreno on some of the questions in the special verdict and determined she was entitled to recover minimum wages and liquidated damages from Bassi. It also found against Moreno on other questions and causes of action. Based on the split verdict, we infer the jury reached a reasoned verdict and was not influenced by the alleged instances of attorney misconduct. (See *Skilling v. United States* (2010) 561 U.S. 358, 384 [" 'jury's ability to discern a failure of proof of guilt of some of the alleged crimes indicates a fair minded consideration of the issues' "; claim of juror bias rejected].) As a result, we conclude Moreno has not demonstrated the element of prejudice, which is essential to obtaining a reversal based on attorney misconduct.

VI.    NONSUIT FOR MS. BASSI*

Moreno contends the trial court erroneously granted Ms. Bassi's motion for nonsuit or a directed verdict.  As a result of the alleged error, Moreno contends she "was denied the opportunity to have a jury decide if Ms. Bassi, along with Mr. Bassi, was her employer and/or legally liable for any of her claims."  Moreno relies on two basic theories.  First, Lucky Farms was organized as a general partnership and Ms. Bassi was liable in her capacity as a general partner.  Second, in a theory raised for the first time on appeal, Moreno contends Ms. Bassi qualified as an "employer" for purposes of Labor Code section 558.1 as a result of being an owner of Lucky Farms and, therefore, was liable for the Labor Code violations.

A.    General Partnership Theory

A well-established principle of appellate procedure holds that appellants have the burden of affirmatively demonstrating the trial court erred.  (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [a trial court's decision is presumed correct and, thus, appellants must affirmatively demonstrate error].)  An aspect of carrying this burden involves citing authority to support an argument.  (Cal. Rules of Court, rule 8.204(a)(1)(B).)  In other words, to establish reversible error, "appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error."  (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

We reject Moreno's partnership theory on two separate grounds.  First, Moreno has failed to affirmatively demonstrate the trial court erred because she has cited no legal authority defining how the existence of a general partnership is proven.  In particular, she has cited (1) no provision from the Corporations Code governing the formation or existence of a general partnership; (2) no case "with a discussion of the substantive law governing partnership formation" (*Eng v. Brown* (2018) 21 Cal.App.5th 675, 693–694);

_____

*    See footnote, *ante*, page 1.

33.

(3) no secondary authority describing California partnership law; and (4) no jury instruction (see e.g., CACI No. 3711). Moreno's failure to identify the legal criteria used to determine whether a partnership exists results in the conclusion that she has not demonstrated the evidence presented was sufficient for the jury to find that criteria was satisfied.

Second, one California court has stated that "the existence of a partnership depends primarily upon the intention of the parties ascertained from the terms of the agreement and from the surrounding circumstances. [Citations.] Ordinarily the existence of a partnership is evidenced by the right of the respective parties to *participate* in the profits and losses and *in the management of the business*." (*Constans v. Ross* (1951) 106 Cal.App.2d 381, 386, italics added.)

The court has reviewed the reporter's transcript of Ms. Bassi's testimony on July 10, 2018. The direct examination, cross-examination and redirect took less than two full pages of transcript. Moreno's counsel did not ask Ms. Bassi (1) if she made an agreement, either written or oral, with her husband to form a partnership; (2) whether she intended the business conducted by Lucky Farms to be organized as a partnership; or (3) whether she had any right to participate in the management of the business. During cross-examination by her attorney, Ms. Bassi testified she was not involved in the day-to-day operations of the farms and, more specifically, she did not supervise anyone, hire anyone, write any checks, deal with any labor contractors, have any role in selling the farm products, or have any role in cultivating or harvesting the crops. Based on Ms. Bassi's testimony and the absence of any testimony from her husband to the contrary, the trial court correctly determined there was insufficient evidence to prove the existence of a general partnership and, thus, properly refused to present that theory to the jury.

B.    Employer Theory

Labor Code section 558.1, subdivision (a) provides that an "employer or other person acting on behalf of an employer, who violates, or causes to be violated any provision regulating minimum wages … may be liable as the employer for such violation."  The phrase " 'other person acting on behalf of an employer' is limited to a natural person who is an owner, director, officer, or managing agent of the employer." (Lab. Code, § 558.1, subd. (b).)  Moreno argues that these statutory provisions make "it clear, that any 'owner' is liable regardless of whether he or she is involved in the day to day management of the business."  Moreno asserts "Ms. Bassi admitted she was an owner and admitted she was acting on behalf of Mr. Bassi and Lucky Farms when she signed documents on behalf of the business."  In Moreno's view, this is enough to make Ms. Bassi liable for the minimum wage violation.

We reject Moreno's interpretation of Labor Code section 558.1 and her application of that interpretation to the facts of this case.  Ms. Bassi cannot be personally liable as an "other person acting on behalf of an employer" because that personal liability attaches when such a person "violates, or causes to be violated, any provision regulating minimum wages."  Moreno's argument ignores this statutory language and offers no explanation for how Ms. Bassi violated the minimum wage law or caused her husband to violate it.  The absence of the required causal connection between Ms. Bassi's conduct and the minimum wage violation prevents Ms. Bassi from being liable under Labor Code section 558.1.  Stated from another perspective, the plain language of the statute does not make all owners liable for a violation of the minimum wage law simply because they sign a document unrelated to the violation.

**DISPOSITION**

The judgment is reversed as to (1) the award of attorney fees to Moreno, (2) the award of costs to Moreno, and (3) the $435 award of costs to Ms. Bassi.  On remand, the trial court is directed (1) to include prejudgment interest on the amounts awarded under

35.

the Labor Code and (2) to conduct further proceedings, consistent with this opinion, to determine the amount of attorney fees and costs awarded to Moreno.  In all other respects the judgment is affirmed.

Pursuant to California Rules of Court, rule 8.276(a)(3), the parties shall bear their own costs on appeal.


FRANSON, Acting P.J.

WE CONCUR:


SMITH, J.


SNAUFFER, J.

36.